# Phillips & Buttorff Manufacturing Co. v. Whitney.

*Action on Contract of Renting.*

1. *Principal and agent; authority of general manager of branch business of corporation.*—A person having charge of a branch store in this State of a foreign mercantile corporation who orders all goods needed from the parent house, and sells them for cash or on credit, at his discretion; receives and pays out all moneys; incurs and discharges all incidental expenses; keeps the bank account, and draws all checks thereon; contracts for the rent of a storehouse, and pays the rent; attends to insurance; and does generally what is necessary in the conduct of the business and usually appertains to the office of general manager,—is the general agent—the vice principal—of the corporation, and authorized to bind the corporation by a renewal lease for the period of five years of a storehouse in which the business has been conducted for a number of years under successive leases for terms of years, unaffected by any secret limitations of

[Phillips & Buttorff Manufacturing Co. v. Whitney.]

authority not fairly implied in the general nature of the office with which he is invested.

2. *Landlord and tenant; rent; eviction.*—A five-year lease of a store-house stipulated for the payment of rent on the first day of every month except when the premises were rendered untenantable by fire, but contained no provision requiring either party to repair. The building having been rendered untenantable during the term by a fire, the lessee refused to repair or to pay further rent, and treated the lease as having expired, whereupon the lessor, without objection on the lessee's part, entered, made the necessary repairs in a proper manner and with reasonable expedition, and tendered the building to the lessee. *Held*, that there was no eviction, and that the lessee was liable on the contract, subject to suspension of rent for the time the building was untenantable.

APPEAL from the City Court of Birmingham.
Tried before the Hon. WM. W. WILKERSON.

J. Q. COHEN and W. C. WARD, for appellant.—
(1) The tenant is not liable to pay rent when no part of the premises demised remains in existence capable of being occupied or enjoyed by such tenant.—*Cook v. Anderson*, 85 Ala. 99 ; *Warren v. Wagner*, 75 Ala. 188. (2) In the absence of a covenant in a lease binding the landlord to rebuild or repair, he has no right to enter for the purpose of repairing. It matters not how the landlord construes his contract of lease, to reenter under such circumstances would be an eviction.—*Smith v. Curr*, 108 N. Y. ; *Wagganer v. Warren*, 75 Ala. 188 ; *Hoveler v. Fleming*, 91 Pa. St. 322 ; Taylor on Landlord and Tenant, § 380, note 3. (3) In the absence of an express agreement to repair, there is no duty upon a landlord to make repairs.—*Burke v. Bragg*, 89 Ala. 204. (4) When one deals with another who professes to be the agent of a third party, the person contracting with him is bound to know the extent of his authority.—*Herring v. Skaggs*, 62 Ala. 180 ; *Wheeler v. McGuire*, 86 Ala. 398. (5) An agent of a corporation with general authority to manage a business has no authority to bind a corporation by negotiable instruments nor to execute sealed instruments in the name of the principal.—*New York Iron Mine v. Negaunee Bank*, 39 Mich. 644 ; Mecham on Agency, § § 398, 401, 419. (6) There can be no ratification of the unauthorized act of an agent, or assumed

agent,to make it the act of the principal,unless the latter adopts what the other has done for his benefit deliberately and with a full knowledge of material facts. *Wheeler v.McGuire*, 86 Ala. 398; *Chapman v. Lee's Admr.*, 47 Ala. 143; *Howe Machine Co. v. Ashley*, 60 Ala. 496; *Sharp v. Bank*, 87 Ala. 644. (7) An agent cannot bind an undisclosed principal by making a lease in his own name under seal. 37 N. J. Eq. 150; *Sinclair v. Jackson*, 8 Cowen, 581; *Briggs v. Patterson*, 64 N. Y., 357; Mecham on Agency, 703, and note.

GARRETT & UNDERWOOD, *contra.*

(No brief came to the hands of the reporter.)

HEAD, J,—This cause was tried by the city court without a jury. The appellant (defendant below) was a mercantile corporation, located and having its principal place of business in Nashville, Tenn. The plaintiff resided in Atlantic, Iowa. From sometime in 1886 until after the principal transactions which gave rise to this suit the defendant conducted a branch business in Birmingham, Alabama. The evidence establishes to our satisfaction the following facts : McClure was vice-president of defendant company, and, though he resided in Nashville, and made only occasional visits to Birmingham, he had special supervision of the Birmingham branch. James B. Hopkins, of Birmingham, was employed to carry on this branch business as general manager, and he conducted it,with the exception of an interval not material to notice, in that capacity. He ordered all goods needed from the parent house ; sold them for cash or on credit, at his discretion ; received and paid out all moneys ; incurred and discharged all incidental expenses ; kept the bank accounts,and drew all checks thereon; made the contracts for the rent of the storehouse, and paid the rents ; attended to insurance and did generally what was necessary in the conduct of the business, and usually appertains to the office of general manager. He was not authorized to purchase goods, except through orders at the parent house, in Nashville. This branch business was conducted under the name of "James B. Hopkins & Co." until in 1889, when it was changed to "The Hopkins Stove & Roofing

[Phillips & Buttorff Manufacturing Co. v. Whitney.]

Co.." It continued under that name until in 1891, when it was changed to "Hopkins Stove & Tinware Co.," in which name James B. Hopkins executed the contracts ·in suit. Large signs bearing these names, respectively, were conspicuously displayed over the door of the store, during the respective times such names were in use. The plaintiff, Whitney, was the owner of the storehouse in which the business was conducted from November, 1886, but from that time to October, 1888, the said "J. B. Hopkins & Co." occupied it under a lease purchased by defendant from one Elliott, who was a lessee of ·Whitney's vendor, paying rent to Whitney after his purchase. So it was that the first term of their occupancy of the building was for something over two years. In August, 1888, Jas. B. Hopkins & Co. renewed the lease with Whitney for three years, to commence October 1, 1888, at $1,500 *per annum*, payable in equal monthly installments, for which notes were given contemporaneously with the execution of the lease. Hopkins and McClure testify that the latter expressly authorized the former to make that contract, but Whitney knew nothing of such express authority. The rent was regularly paid for that term by James B. Hopkins, by checks drawn by him on the bank account, in the names the business was being conducted under, at the respective times of such payments. On August 19, 1891, Jas. B. Hopkins, signing "Hopkins Stove & Tinware Co. per J. B. H., Man'g'r," renewed the lease, for five years, commencing Oct. 1st, at $1,800 *per annum*, payable in equal monthly installments, for which negotiable notes, signed in the same way, were executed contemporaneously with the execution of the lease. Whitney agreed to expend $600 in certain interior improvements of the building, which he, accordingly, did. The business went on, rents being regularly paid each month, until February 12th, 1892, when the building was partially destroyed by fire, and rendered wholly unsuitable for the use of the mercantile business, unless and until repaired. There was no provision in the lease touching such a contingency, except a stipulation that the rent should be paid, "$150 on the first day of each month, being at the rate of $1,800 *per annum*, except when said premises are untenantable by reason of fire or from any other cause than carelessness of the parties of the

second part, or persons in their employ." On February 20th defendant removed its goods from the building, paid rent up to the time of the fire, and declined thereafter to occupy the building or pay any subsequent rents. Under circumstances hereafter to be noticed, the plaintiff, by his contractors, fully repaired the building, work thereon having commenced on the day prior to the removal by defendant of its goods. In reference to the capacity of Jas. B. Hopkins, and his authority to execute the lease, in addition to the facts already stated, McClure was frequently in the store from October 1st, 1891, until the fire, in the exercise of his supervision; had unlimited access to all books and papers; knew the three years' lease expired October 1st, and knew of course that the house was thereafter being occupied by the procurement of Hopkins; he must have seen the extensive interior improvements which had been made in the building, yet, in view of all these facts, he made no inquiry whatever touching the new letting, but suffered the whole matter to rest with Jas. B. Hopkins, without inquiry or any manner of suggestion or objection. It seems that negotiations with Whitney, looking to this renewal of the lease, commenced some months before its execution, by Frank Hopkins, who for an interval of time prior to June, 1891, had charge of the business; and McClure and Jas. B. Hopkins now testify that McClure instructed Frank Hopkins not to enter into a lease. The negotiations were concluded, as we have seen, by Jas. B. Hopkins, and the lease executed by him in August, 1891, after he had resumed management of the business in June preceding. The defendant being now sued for rents accruing subsequent to the fire, pleads *non est factum*, and unlawful eviction; and McClure and Hopkins testify that the latter had no authority to execute the lease, and that defendant had no knowledge of its execution until after the fire. McClure supposed, as he now says, that Hopkins was renting the store *by the month*. It is a further fact that he admitted in his testimony that he had sworn, in answering interrogatories propounded to the defendant, under the statute, in this cause, that "at first, we paid $800 per year, then from October 1st, 1888, $1,500 per year, and from October, 1891, at the rate of $1,800 per year;" but he says, on his present examination, that he did not know until af-

ter the fire what rent they had been paying since October 1st, 1891, though he did know before as to the prior rents. It is a further fact that Buttorff, the president of defendant, arrived in Birmingham the morning after the fire, and W. B. Leedy, who had been constituted, by wire, plaintiff's agent in the matter, had an interview with him at the store. Buttorff had the lease in his hand, and read to Leedy the clause in reference to the suspension of rent while the building should be untenantable from fire or other cause, and claimed that that clause put an end to the lease; from which Leedy dissented. The authority of Hopkins to execute the lease was not then questioned. We have simply stated the facts as we find them from the evidence. They furnish their own argument. We have no doubt that Hopkins was the general agent—the vice-principal—of the defendant corporation, and, as to the public and the plaintiff, authorized to make such a contract as that in question, unaffected by any secret limitation of authority not fairly implied in the general nature of the office with which he was invested. The appellation of "head clerk" which McClure gives Hopkins is a mere name. The office he gave him made him a general manager.—*Southern Bell Telephone Co. v. Allen, ante*, p. 224. The plea of *non est factum* was met and overcome.

Was the defendant unlawfully evicted by the plaintiff? The eviction is claimed to have consisted in the fact that the plaintiff entered upon the premises to repair the building. There was no clause in the contract requiring either party to repair. By the special clause to which we have referred the defendant was exempted from the payment of rent while the building should remain in the condition the fire left it. It was wholly untenantable for any purpose contemplated by the lease. Goods could not have been kept and preserved therein. The repair of the building, also, by whomsoever made, would necessitate their removal. It was the defendant's right to make repairs, but it was a right which could be waived. The plaintiff, by virtue of the clause in question, to say nothing of his general ownership of the property, had a legal interest in the speedy repair of the building, to the end that the payments of rent might continue, under the lease. If the defendant waived its right to repair by making known to plaintiff its purpose

[Prichard v. Sweeney.]

not to do so, made no objection to the repairs being made by the plaintiff, but repudiated the lease *in toto*, as having expired by its terms, the plaintiff had the right to go for-ward and make the repairs, in a proper manner, and with reasonable expedition, and hold the defendant to its con-tract, subject to suspension of rent for the time the build-ing was untenantable. We will not undertake to repro-duce the correspondence and interviews between the par-ties and their agents. They began by wire, before the fire was extinguished. They show, without a doubt, that the defendant repudiated the lease outright, by rea-son of its terms; waived its right to repair, and ab-stained, carefully it seems to us, from interposing any ob-jection to the plaintiff's entering and making the repairs, though his purpose to do so, and still hold it to its contract, was fully made known to the defendant. The building was repaired in a proper manner, and with reasonable diligence, and at once tendered to the defendant, and was refused. There was no eviction, and the city court properly held the defendant liable upon its contract.

The assignments of the rulings upon the pleadings are not insisted upon in the brief. The case being tried by the court without the intervention of a jury, we dispose of it, as appellant's counsel have argued it, on the merits.

Affirmed.